UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| GLENN ANTHONY LINDSEY, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 4:20-cv-00356-JHE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Glenn Anthony Lindsey ("Lindsey") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for supplemental security income ("SSI"). (Doc. 1). Lindsey timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record, and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

On December 29, 2016, Lindsey protectively filed an application for SSI, alleging disability beginning May 1, 2015. (Tr. 26, 71, 139). On December 26, 2018, Lindsey amended his alleged onset date to December 19, 2016. (Tr. 151). After the agency denied his application, Lindsey requested and appeared at a hearing before an Administrative Law Judge ("ALJ") on

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (*See* doc. 10).

January 23, 2019. (Tr. 36-60, 79-135). The ALJ issued an unfavorable decision on January 29, 2019, finding Lindsey not disabled. (Tr. 23-35). Lindsey requested review of the ALJ's decision, but the Appeals Council denied his request on January 15, 2020. (Tr. 1-8). On that date, the ALJ's decision became the final decision of the Commissioner. On March 16, 2020, Lindsey initiated this action. (*See* doc. 1).

Lindsey was fifty-seven-years-old at the time of the ALJ's decision. Lindsey has completed the twelfth grade and previously worked as a truck driver and janitor. (Tr. 160, 167, 198, 219). He alleges disability due to shoulder and lower back pain. (Tr. 156, 159).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Lindsey had not engaged in substantial gainful activity since December 29, 2016, the application date. (Tr. 28). At Step Two, the ALJ found that, despite having the medically determinable impairment of mild lumbar spine degenerative disc disease, Lindsey did not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) his ability to perform basic work-related activities for 12 consecutive months; therefore, the ALJ found that Lindsey does not have a severe impairment or combination of impairments. (Tr. 28-30). Finding no severe impairment, the ALJ did not proceed past Step Two of the sequential evaluation process and found that Lindsey is not disable under § 1614(a)(3)(A) of the Social Security Act. (Tr. 31).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Lindsey failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. However, Lindsey presents four "Errors of Law" in support of disability. (*See* doc. 11 & 13). Lindsey contends (1) the ALJ's decision finding Lindsey does not have a severe impairment is not based on substantial evidence and is not in accordance with the definition of "severe impairment;" (2) the ALJ drew an improper adverse inference from Lindsey's lack of medical care; (3) the ALJ improperly rejected Dr. Celtin Robertson's opinion and substituted his opinion; and (4) the ALJ's decision was not based on substantial evidence. (Doc. 11 at 1-2, 10-30 & doc. 13).

As an initial matter, Lindsey's fourth claim, labeled "the ALJ's decision was not based on substantial evidence," is actually an argument that the ALJ erred by posing an incomplete hypothetical to the vocational expert ("VE"). (*See* doc. 11 at 26-30 & doc. 13 at 9-12). This claim lacks merit because the ALJ found Lindsey was not disabled at Step Two of the sequential evaluation. (Tr. 29-30). The ALJ determined, based on the medical and other evidence, that Lindsey does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities. (Tr. 30). That determination, if upheld, supports the conclusion that Lindsey is not disabled and does not require testimony from a VE. Therefore, the ALJ was not required to proceed to Step Three, Four, or Five of the sequential evaluation process,

which is when he may have needed to rely on testimony from thus VE. Thus, the ALJ's decision was not based on any purported error with the VE's testimony and is therefore inconsequential and harmless.

### A. There is Substantial Evidence to Support the ALJ's Finding that Lindsey Does Not Have a Severe Impairment.

Lindsey bears the ultimate burden of establishing that he is disabled. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). His primary argument on appeal is that the determination that he does not have a severe impairment is not supported by substantial evidence. (Doc. 11 at 10-13). Lindsey also alleges errors relating to the ALJ's consideration of his lack of medical treatment and the "little weight" the ALJ gave Dr. Robertson's opinion. (*Id.* at 13-26). The ALJ did not err in either regard.

At Step Two of the sequential evaluation, the ALJ found Lindsey's mild lumbar spine degenerative disc disease to be a medically determinable impairment, but further found that Lindsey did not have an impairment or combination of impairments that constituted a severe impairment, as defined by the regulations. (Tr. 28-30). Like the ultimate burden of proving disability, the claimant has the burden to prove he has a severe impairment or combination of impairments. *See Jones v. Apfel*, 190 F3d 1224, 1228 (11th Cir. 1999) ("At the second step, she must prove that she has a severe impairment or combination of impairments."). An impairment or combination of impairments is severe if it/they "significantly limits [the claimant's] physical or mental ability to do basic work activities[,]" irrespective of age, education, and work experience. 20 C.F.R. § 416.920(c). Thus, an impairment or combination of impairments is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 416.922(a). Basic work activities include "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(d). Examples of basic work activities include "(1) Physical functions such

as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id.* To establish a severe impairment, a claimant may not rely solely on subjective reports of symptoms or a diagnosis alone. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921.

Although the ALJ found Lindsey has the medically determinable impairment of mild lumbar spine degenerative disc disease based on his February 17, 2017 x-ray, the ALJ determined it was not severe because Lindsey only had mild findings on diagnostic imaging, only a few abnormal findings on exam, and testified that over-the-counter NSAID's work to decrease his pain. (Tr. 28-30). Although this is a threshold inquiry and "only claims based on the most trivial impairments [should] be rejected" *McDaniel v. Bowen*, 800 F2d 1026, 1031 (11th Cir. 1986), this determination that Lindsey's impairment is not severe is supported by substantial evidence. The record contains a February 17, 2017 lumbar spine x-ray that shows mild facet arthropathy involving L4-5 and L5-S1 and mild discogenic degenerative change at L5-S1. (Tr. 265). The ALJ notes and accounts for this image by noting it and finding Lindsey has the medically determinable impairment of mild lumbar spine degenerative disc disease. (Tr. 28). However, as the ALJ explains, the findings from Lindsey's February 17, 2021 State Agency consultative physical examination were "essentially normal." (Tr. 29, 267-70). The x-ray revealed normal alignment, well-maintained vertebral body heights, no pars defect, and no high-grade neural foraminal

7

stenosis. (Tr. 265). Although Lindsey presented with complaints of back pain at a 3-4 out of 10 when sitting, he had normal gait, straight leg raises were negative for sciatica, there was no tenderness to palpation, motor strength was assessed as 5/5, and muscle tone and bulk was normal. (Tr. 266-70). Dr. Roberson diagnosed Lindsey with "back pain as per claimant." (*Id.*).

The next record is from April 18, 2017, when Lindsey saw a doctor at Quality of Life Health Services for back pain. (Tr. 271-75). He complained of pain at a 7 out of 10, that was worsening and persistent, radiated down his right thigh and buttocks, and was tingling and shooting in his leg. (*Id.*). Lindsey reported the pain was aggravated by activity, but relieved by rest. (*Id.*). Although the ALJ noted that Lindsey reported bladder and bowel incontinence as well as sexual dysfunction, Lindsey denied these as well as weakness at this appointment.[4] (*Id.*). On exam, Lindsey was positive for posterior tenderness and paravertebral muscle spasm. (Tr. 274-75). The doctor assessed back and hip pain and prescribed meloxicam (Mobic, a NSAID for pain) and methocarbamol (Robaxin, for muscle spasms). Warm compresses and topical pain medication were also prescribed. (*Id.*). A one-month follow-up was planned. (Tr. 274).

Lindsey next visited Quality of Life Health Services on June 6, 2017. (Tr. 276-80). He reported pain at a 10 out of 10, radiating down his back and also characterized it as an ache. (*Id.*). Again, he reported by the pain was aggravated by activity. (*Id.*). At this appointment, the doctor reviewed x-rays taken April 21, 2017, which revealed "no acute findings" for Lindsey's lumbar spine and right hip. (Tr. 276, 281). The doctor added 800 mg of ibuprofen three times a day to Lindsey's medication regimen, continued the methocarbamol for muscle spasms, and prescribed Voltaren topical gel to be applied to the affected areas. (Tr. 279). The plan included instructions

---

[4] There is no indication the ALJ's reference to the report of symptoms, as well as the ALJ's mistake that they were reported, had any impact on his analysis.

to follow-up in two months. (Tr. 279).

The next and final record is a March 28, 2018 visit to Quality of Life Health Services. (Tr. 282-88). Examination showed Lindsey had normal gait, normal range of motion, and no pain on flexion or extension of the lumbar spine. (Tr. 286). Lindsey assessed his pain as 5 out of 10. (Tr. 286). Although Lindsey reported pain with use, he denied crepitus, decreased mobility, joint instability, join locking, joint swelling, muscle weakness, and neck pain. (Tr. 285). Notes indicate that the April 21, 2017 x-rays were again reviewed, and there are notes that the earlier x-rays would be sent for. (Tr. 285). Notes also indicate a plan to observe Lindsey's response to medication, which continued to be ibuprofen for pain, methocarbamol for muscle spasms, and added diclofenac potassium (a NSAID for pain). (Tr. 286). These records also include orders for an ANA Screen W/RELF TO TITER AND PATTERN IFA, HLA-B27 DNA Typing, and RHEUMATOID FACTOR to be performed. (Tr. 285). Thus, it appears doctors may have suspected Lindsey had an autoimmune issue, but there are no medical records after this date to confirm this.

### 1. Consideration of Dr. Robertson's Opinions

Lindsey contends the ALJ improperly "rejected" opinion evidence from Dr. Robinson, the State Agency consultative examiner who saw Lindsey on February 17, 2017. (Doc. 11 at 15). Specifically, Lindsey asserts the ALJ failed to show "good cause" and failed to state with at least "some measure of clarity" for doing so and substituted his opinion for that of a medical expert. (*Id.*). In addition to the records above, the ALJ considered opinion evidence from Dr. Robinson. (Tr. 30). The ALJ accorded "little weight" to Dr. Robinson's opinion evidence and, for support, pointed to Dr. Robinson's summary of the evidence that Lindsey only had mild findings on diagnostic imaging, only few abnormal findings on examination, and testified that over-the-counter NSAIDs work to decrease his pain as well as the point that 5/5 strength and normal muscle

bulk and tone undermine any argument that there is atrophy from disuse which would be expected with the pain alleged.  (Tr. 30).

Specifically, Dr. Robinson provided a functional assessment and Medical Source Statement assessing no limitations except "[o]ccasionally 25-50 pounds limited by difficulty with squatting," "occasionally crouch limited by difficulty with squatting and can never climb ladders due to increased risk of injury as a result of decreased reaction time," and "[n]o . . . hazards such as unprotected heights due to increased risk of injury as a result of decreased reaction times."  (Tr. 269-70).

The ALJ is required to "state with particularity the weight given different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986); *see also Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948, 955 (11th Cir. 2019); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Generally, a treating doctor's opinion is entitled to more weight than one from a consulting doctor. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019).  Notably, the opinion of a one-time examiner, such as Dr. Robertson, is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020). However, while an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," he is required to state, "with particularity[,] the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006).

Here, substantial evidence supports the little weight the ALJ gave to Dr. Robertson's opinion.  First, Dr. Robertson is a consultative examiner, thus his opinion is not controlling and is not entitled to deference. *See McSwain*, 814 F.2d at 619.  Second, as noted above, the ALJ stated

the particular weight that he gave to Dr. Robertson's opinion. (Tr. 30). Third, the ALJ's reasoning is adequate to explain why he discounted Dr. Robertson's opinion. Specifically, the ALJ's reference to other parts of the record provides sufficient reasoning to show why he gave little weight to Dr. Robertson's opinion as "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832. Finally, there does not appear to be any objective findings in the record to support Dr. Roberson's limitations relating to squatting and reaction time. (Tr. 266-270). For these reasons, the ALJ's decision to accord "limited weight" to Dr. Robertson's opinions is supported by substantial evidence, and there was no error.

### 2. Reference to Lack of Medical Treatment

Lindsey also contends the ALJ erred by making an improper adverse inference based on his lack of medical treatment. (Doc. 11 at 13-15). To this end, an ALJ may not draw any inference about an individual's symptoms and their functional effects based on a failure to pursue regular medical treatment without first considering any explanations that the individual may provide. SSR 969-7p, 1996 WL 374186, at *7,

At the hearing, Lindsey testified that he has not had health insurance since December 2016, and that he did not feel like he had been able to have his conditions properly treated without insurance. (Tr. 54). In his decision, the ALJ notes Lindsey "has not been back to the doctor for these alleged problems since 2017" and later mentions that Lindsey "did not return [to Quality of Life Health Services] for another nine months." (Tr. 30). Although these comments should draw attention and deserve to be reviewed, upon review, they do not show that the ALJ made any adverse inference based on Lindsey's lack of medical treatment. Instead, the comment regarding "not returning to the doctor for these alleged problems" is based on the fact Lindsey did not report

the symptoms discussed at his later appointments (i.e., he did have additional appointments). Additionally, there is no inference drawn from the fact that nine months passed between the appointments in June 2017 and March 2018. It is a superfluous statement. There is no error related to the ALJ's reference to Lindsey's lack of treatment.

Instead, the record illustrates Lindsey has not met his burden to show his impairment significantly affects his ability to perform worked related activities and was therefore severe. The initial x-ray only showed mild findings, and the subsequent x-ray had "no acute findings." (Tr. 265, 281). There are only a few abnormal findings on exam, including lumbar tenderness and muscle spasm in April 2017. (Tr. 274-75). However, exams performed in June 2017 and March 2018, were normal in these respects. (Tr. 276-88). The record also demonstrates Lindsey's pain was significantly relieved by over-the-counter medication. (Tr. 30, 51). Finally, the normal findings regarding strength, as well as muscle bulk and tone, show a lack of atrophy that would be expected if Lindsey were as limited from pain as he alleged. The only support in the record for any work-related limitations would be Dr. Robertson's opinion regarding squatting and reaction time, which, for the reasons explained above, were properly discounted. Taken together, this constitutes substantial evidence to support the ALJ's determination that Lindsey does not have an impairment or combination of impairments that is severe, and there are no other errors to support reversal.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, decision of the Commissioner of Social Security denying Lindsey's claim for SSI is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.** A separate order will be entered.

DONE this 10th day of September, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE